IN THE
UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

Cecil Koger,

     *Plaintiff-Appellant*,

    v.

Gary Mohr, et al.,                          **CASE NO. 19-4020**

     *Defendants-Appellees*.

On Appeal from the United States District Court for the
Northern District of Ohio, Case No. 4:17-cv-02409-BYP

**REPLY BRIEF OF PLAINTIFF-APPELLANT CECIL KOGER**

Andrew Geronimo
    *Lead Counsel*
MILTON A. KRAMER LAW CLINIC CENTER
CASE WESTERN RESERVE UNIVERSITY SCHOOL OF LAW
11075 East Boulevard
Cleveland, Ohio  44106
Tel.: 216.368.2766
Fax: 216.368.5137
*andrew.geronimo@case.edu*

*Counsel for Plaintiff-Appellant Cecil Koger*

# TABLE OF CONTENTS

Table of Contents 1

Table of Authorities 2

Argument 3

   I.    ODRC did not properly support their motion for summary judgment, and the district court did not properly apply the summary judgment standard. .........................................................................5

      a.   ODRC's motion for summary judgment failed to address all of the factual allegations supporting Koger's claims. ..........................................5

      b.   The district court failed to view the evidence and inferences in the light most favorable to Koger. ................................................................9

      c.   Koger's religious beliefs should be evaluated by the statements in his affidavit, not from ODRC's selections from  a religious text. ..........10

   II.   Koger's claims are not moot. ...............................................................11

   III.  ODRC examining and photographing Koger to collect evidence, without notifying the Court or Koger's attorney, violates Fed. R. Civ. P. 35(a)(1). ...............................................................................................13

      a.   ODRC examined Koger for the purposes of Rule 35. ......................13

      b.   Koger could not have agreed to an examination without knowing the essential terms. .................................................................................15

   IV.  Defendants are not entitled to qualified immunity. .............................16

Conclusion 17

Certificate of Compliance 1

Certificate of Service 1

**Cases**

*A. H., ex rel. Hohe v. Knowledge Learning Corp.*, No. CIV.A. 09-2517-DJW, 2010 WL 4272844 (D. Kan. Oct. 25, 2010) ..................................................16

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1996) .............................................10

*Anderson v. Sposato*, 2013 U.S. Dist. LEXIS 21214 (E.D.N.Y. Feb. 11, 2013)...17

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986 .........................................................7

*Cruz v. Beto*, 405 U.S. 319, 92 S.Ct. 1079 (1972) ..................................................18

*Cutter v. Wilkinson*, 544 U.S. 709 (2005) ...............................................................9

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 120 S. Ct. 693 (2000) ............................................................................................................12

*Garity v. Donahoe*, No. 2:11-CV-01805-RFB, 2014 WL 4402499 (D. Nev. Sept. 5, 2014) ..............................................................................................................17

*Haight v. Thompson*, 763 F.3d 554 (6th Cir. 2014)............................................4, 9

*Hoevenaar v. Lazaroff*, 422 F.3d 366 (6th Cir. 2005) .............................................9

*Holt v. Hobbs*, 574 U.S. 352, 135 S.Ct. 853 (2015)................................................9

*Kankam v. Univ. of Kan. Hosp. Auth.*, No. 07-2554-KHV, 2008 WL 4369315 (D. Kan. Sept. 23, 2008) ..........................................................................................14

*Lexicon, Inc. v. Safeco Ins. Co. of America, Inc.*, 436 F.3d 662 (6th Cir.2006).......5

*Maye v. Klee*, 915 F.3d 1076 (6th Cir. 2019 .........................................................4

*Schlagenhauf v. Holder*, 379 U.S. 104 (1964)......................................................14

*Stoudemire v. Mich. Dep't of Corr.*, 705 F.3d 560 (6th Cir. 2013) .......................17

*Whitney v. Brown*, 882 F.2d 1068 (6th Cir. 1989) ...............................................18

**Statutes**

42 U.S.C. § 2000cc-5(7)(A) .....................................................................................11

**Rules**

Fed. R. Civ. P. 35.....................................................................................................14

**ARGUMENT**

ODRC's brief highlights why there are genuine issues of material fact in this case that preclude summary judgment for ODRC. The evidence—including Koger's affidavit (RE 50-1), the video of the force-cut (RE 51), and the affidavit memorializing ODRC's improper examination of Koger (RE 52-4)—shows that current ODRC policy prohibits Koger from naturally growing his hair, and ODRC denies Koger the same dietary accommodations as a Rastafarian that it will grant him if he identifies as a religion other than his own. And ODRC's brief fails to distinguish or even address recent, binding decisions of this Court on very similar issues—specifically *Haight v. Thompson*, 763 F.3d 554, 559-60 (6th Cir. 2014), and *Maye v. Klee*, 915 F.3d 1076, 1083 (6th Cir. 2019)—and does not contest their applicability to the issues in this case.

In evaluating the evidence submitted with the summary judgment briefs, the district court was overly deferential to ODRC's conclusory affidavits in light of Koger's evidence to the contrary, failed to apply the heightened, claimant-specific standard RLUIPA requires, and overlooked Koger's claims that ODRC did not address in their motion. ODRC premised their motion for summary judgment motion on arguments that

3

Koger was no longer Rastafarian, that the revised grooming policy mooted Koger's claims, and that the revised grooming policy satisfied the exacting scrutiny of RLUIPA. ODRC did not offer evidence justifying their application of the revised policy in a way that burdens Koger's religious exercise in light of the lack of evidence concerning contraband in the prison. Nor did ODRC explain with any specificity why their method of searching hair is affected by dreadlocks thicker than one-half inch, or why readily-available alternatives could not be used to prevent burdening Koger's religious beliefs. ODRC did not substantively address Koger's non-grooming claims related to ODRC's refusal to accommodate Koger's dietary requests or requests to congregate with other Rastafarians (see Amended Complaint, RE 32 at PageID 316-317), and thus could not show an absence of triable issues as to those claims.

Now, ODRC relies on a series of arguments that they did not make in their motion for summary judgment, and thus were waived/forfeited. See, Memorandum of Opinion and Order, RE 56 (hereinafter "Op."), PageID 651, FN 4; see also *Lexicon, Inc. v. Safeco Ins. Co. of America, Inc.*, 436 F.3d 662, 676 (6th Cir.2006) (courts may not consider issues raised for the first time in a reply brief). ODRC argues that Koger did not request

accommodations under the revised grooming policy, and that he failed to exhaust administrative remedies with respect to his claims about his diet. The trial court properly found that by waiting until their reply to raise these arguments, ODRC waived them. Op. at PageID 651. In light of Koger's testimony that ODRC's revised policy prohibits the natural growth of his hair, and ODRC will grant him an accommodation if he identifies as Muslim, but denies him the same accommodation if he identifies as Rastafarian, factual issues for trial remain.

Finally, ODRC continues to insist that they were entitled to interview, examine, and photograph Koger solely to collect evidence for this lawsuit after discovery closed, without notifying his attorney or the court. This is contrary to the plain language and intent of Rule 35, and to any judicial decision undersigned counsel has been able to identify on the issue.

I. **ODRC did not properly support their motion for summary judgment, and the district court did not properly apply the summary judgment standard.**

   a. ODRC's motion for summary judgment failed to address all of the factual allegations supporting Koger's claims.

ODRC filed a motion for summary judgment that did not fully address the claims in Koger's amended complaint, and could not have served as a proper basis for the district court's broad grant of summary

judgment. A party seeking summary judgment bears the burden of identifying the particular sources of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). ODRC's burden for depriving Koger of a trial was to show, when construing all facts in Koger's favor, an absence of genuine issues of material fact on all claims in Koger's amended complaint. *Id.*

ODRC's motion for summary judgment was premised on four arguments: (1) the revised AR does not burden Koger's religious beliefs as a Rastafarian because they alleged he is a Muslim; (2) that the revised grooming policy is the least restrict means to further a compelling governmental interest; (3) the revised grooming policy mooted Koger's claims because the "government's voluntary self-correction" made it so ODRC was not burdening Koger's religious belief; and (4) Defendants were entitled to qualified immunity. ODRC supported their motion with two affidavits: an affidavit describing the change in grooming policies (RE, and an affidavit authenticating Koger's accommodation form to fast as a Muslim during Ramadan. ODRC offered no evidence regarding Koger's claims that ODRC substantially burdened his religious diet or his request for groundings, and thus could not have demonstrated an absence of

6

factual issues on these parts of Koger's Amended Complaint. In fact, in ODRC's Reply to Plaintiff's Opposition (RE 52), ODRC concedes that they sought summary judgment based upon the allegations contained in Koger's original complaint (RE 1), and not his amended complaint (RE 32). *See* RE 52, FN 1, PageID 536.

ODRC waived a number of arguments because they raised them for the first time in their reply brief. ODRC waived the argument that Koger failed to exhaust his administrative remedies as to any of his claims, and ODRC waived any arguments that it was not substantially burdening requests other than those related to ODRC's grooming policies, e.g., his dietary or grounding accommodation requests.

The district court found that Koger showed a genuine issue of material fact as to whether the revised grooming policy substantially burdened his religious beliefs,[1] but that the revised grooming policy was

---

[1] ODRC's Brief mischaracterizes the district court's ruling. The district court did not find that "ODRC's revised grooming regulation does not substantially burden the exercise of [Koger's] religious beliefs," as described in Section A of ODRC's argument. The district court instead found that Koger "met his burden in showing a genuine issue of material fact as to whether ODRC's grooming policy substantially burdened the exercise of his religious beliefs." *See* Op., PageID 658.

the least restrictive means of achieving the compelling state interest of prison security. Op. at 17-23, PageID 657-61. Specifically, the district court relied on two older cases to hold that "prison security is a compelling state interest" which "extends to the even-handed application of its grooming policy to all of its inmates." *Id.* at 658-59, citing *Cutter v. Wilkinson*, 544 U.S. 709, 725 n. 13 (2005), and *Hoevenaar v. Lazaroff*, 422 F.3d 366, 371 (6th Cir. 2005). However, as stated in Koger's opening brief, this Court has recognized in more recent cases that under RLUIPA, courts should reject such generalized considerations and apply a more demanding standard. See Koger Br. at 21-23. RLUIPA requires a court to "scrutiniz[e] the asserted harm of granting specific exemptions to particular religious claimants" and "to look to the marginal interest in enforcing" the challenged government action in that particular context. *Holt v. Hobbs*, 574 U.S. 352, 135 S.Ct. 853, 863 (2015); *Haight v. Thompson*, 763 F.3d 554,559-60 (6th Cir. 2014). ODRC's brief does not cite *Haight* at all, and does not attempt to address this demanding, individualized standard; instead it relies on a conclusory statement that security concerns justify application of the revised policy as to Koger.

8

**b. The district court failed to view the evidence and inferences in the light most favorable to Koger.**

ODRC and the district court fault Koger for failing to present certain evidence that he had no obligation to present until ODRC properly supported their motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1996); *See, e.g.*, Op. at PageID 670 ("Yet Plaintiff fails to provide evidence that Defendants purposefully discriminated against him by prohibiting him from dieting, fasting, or communing with other members of his faith."); see also *id*. at PageID 671 ("Plaintiff provides no evidence that he found the meal accommodation to be inadequate, or that he notified ODRC of his dissatisfaction of the meal accommodation."). However, Koger testified that "ODRC will not allow me to fast as a Rastafarian," and "If ODRC facilities allowed Rastafarians to receive diet and fasting accommodations, I would not be forced to request exemptions as a Muslim simply so that I may practice my religion more faithfully." Koger Aff., RE 50-1, PageID 474-75. Thus, viewing the facts and inferences in Koger's favor, there is at least a triable issue of fact as to whether ODRC's refusal to

accommodate his dietary restrictions violate RLUIPA and the First Amendment.

### c. Koger's religious beliefs should be evaluated by the statements in his affidavit, not from ODRC's selections from a religious text.

Rather than address the claims in Koger's affidavit and explain why ODRC treats Muslim inmates one way and Rastafarian inmates another way, they fault Koger for not including details from a religious text that he never claimed to be part of his religious requests. ODRC Brief at 6-7, 25-28. Although ODRC attempts to argue that Koger never requested accommodations as specific as those contained in the *Fetha Negast*, RLUIPA specifically prohibits courts from considering what beliefs are central or orthodox to a specific faith when considering a particular religious exercise. 42 U.S.C. § 2000cc-5(7)(A) ("The term "religious exercise" includes any exercise of religion, whether or not compelled by, or central to, a system of religious belief."); *see also Haight* at 566 ("RLUIPA protects a broad spectrum of sincerely held religious beliefs, including practices that non-adherents might consider unorthodox, unreasonable or not "central to" a recognized belief system."). Although Koger referenced the *Fetha Negast*, among other texts, in some of his accommodation requests, ODRC

cannot, as a matter of law, ascribe all of the contents of those texts to Koger. Koger's affidavit describes his religious beliefs, and this Court's consideration should be limited to those statements, not to ODRC's counsel's beliefs, based on her own internet research, as to his beliefs.

## II.     Koger's claims are not moot.

Koger's claim is not moot. A defendant's voluntary cessation of allegedly unlawful conduct ordinarily does not suffice to moot a case. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 174, 120 S. Ct. 693, 700 (2000). If changing the policy were sufficient to moot this case, ODRC could continuously change the policy mid-litigation without any hope of Koger addressing the merits of the discriminatory policies at issue.

Even with the change in policy, ODRC's existing policy forbids the natural growth of his hair, and ODRC has not granted him any exemption from that policy. At the motion for summary judgment stage, Koger, as the non-movant, is entitled to have the evidence viewed in the light most favorable to him. Koger's affidavit sets forth the ways in which ODRC continues to burden his sincerely held religious beliefs. ODRC's revised grooming policy prohibits Koger's hair without religious accommodation,

11

and Koger's affidavit shows they have not provided any religious accommodation.

ODRC's own evidence—although improperly gathered—shows Koger's challenge to the revised grooming policy is not moot. The Warden's assistant's affidavit and the video of the force-cut of Koger's hair confirms, his hair naturally grows thicker than one-half inch. After ODRC's ex-parte, extrajudicial examination of Koger on April 8, 2019, Rossi Azmoun testified that "each of Mr. Koger's dreadlocks was approximately one-half inch in thickness or less." Although the district court properly struck this affidavit, it shows that as of April 2019, ODRC acknowledges that Koger had dreadlocks one-half inch in thickness. Koger's hair continues to grow, and viewing the facts in his favor, his hair currently or imminently violates the revised grooming policy. At any time during this litigation, the ODRC Defendants could have granted Koger an exemption from these policies—they have not, and they continue to discriminate against Koger to this day.

**III. ODRC examining and photographing Koger to collect evidence, without notifying the Court or Koger's attorney, violates Fed. R. Civ. P. 35(a)(1).**

    **a. ODRC examined Koger for the purposes of Rule 35.**

Civil Rule 35 "requires discriminating application by the trial judge, who must decide, as an initial matter in every case, whether the party requesting a mental or physical examination or examinations has adequately demonstrated the existence of the Rule's requirements of 'in controversy' and 'good cause.'" *Schlagenhauf v. Holder*, 379 U.S. 104, 118-19 (1964). The "movant must produce sufficient information, by whatever means, so that the district judge can fulfill his function mandated by the Rule." *Id.* This process, as distinguished from other forms of discovery, provides important safeguards against abuse. *See Kankam v. Univ. of Kan. Hosp. Auth.*, No. 07-2554-KHV, 2008 WL 4369315, at *6 (D. Kan. Sept. 23, 2008) ("defendant has provided absolutely no details regarding the scope of the examination, the proposed examiner, or the time, manner or conditions of the exam. By leaving the court uninformed regarding such important facts, the defendant has failed to show appropriate safeguards against harassment and intimidation have been secured."). This potential

for abuse and coerciveness is magnified when the parties involved are a prison inmate and the institution in which he is incarcerated.

ODRC's attempts to distinguish *Watson* miss the point: the issue is not whether a particular request to photograph is relevant or not; it is who gets to decide whether such an examination is appropriate. Because the government in *Watson* followed Civil Rule 35 and filed a motion to examine the plaintiff, the district court fulfilled its gatekeeping function and refused to allow the defendant to photograph the plaintiff to support its defense. In this case, ODRC circumvented the entire process, and decided unilaterally to examine and photograph Koger out of view of his attorney or the court.

ODRC's examination was not similar to one taken by an "inanimate security camera, a by-stander, or an investigator," as ODRC argues. ODRC Br. at 18. Arguably, there would be no Rule 35 issue if ODRC included footage from an existing security camera, or if the photographs were taken as part of a routine screening process.  But ODRC specifically singled out Koger to be examined and photographed by the Warden's assistant five days after Koger filed his opposition to ODRC's motion for summary judgment, solely to gather evidence to support their motion. *See* RE 52-4.

14

### b. Koger could not have agreed to an examination without knowing the essential terms.

ODRC argues that Koger "specifically agreed to have ODRC officials take pictures of his dreadlocks," citing to Koger's affidavit in his opposition to their summary judgment motion. ODRC Br. at 10. This argument cannot be made in good faith. Koger's affidavit spoke to potentially less-restrictive means of satisfying ODRC's alleged security concerns, and was not a blanket authorization to photograph him to gather evidence for this lawsuit. Mr. Koger's affidavit described alternatives he was willing to submit to in order to prevent ODRC from force-cutting his hair again, in order to show readily available alternatives to the force-cuts. ODRC has not agreed to stop cutting his dreadlocks, and has not authorized him to fast as a Rastafarian.

ODRC did not even notify Koger's counsel of the date, time, or manner in which Koger would be examined, and Koger not have possibly agreed to ODRC's examination without knowing those crucial details. *A. H., ex rel. Hohe v. Knowledge Learning Corp.*, No. CIV.A. 09-2517-DJW, 2010 WL 4272844, at *2 (D. Kan. Oct. 25, 2010) (no agreement where "[t]he parties were unable to agree as to the *scope or terms* of Defendant's

proposed Rule 35 exam.") (emphasis added); *cf. Garity v. Donahoe*, No. 2:11-CV-01805-RFB, 2014 WL 4402499, at \*3 (D. Nev. Sept. 5, 2014) (finding agreement to physical examination where "Plaintiff expressly agreed that she would attend a Rule 35 examination and to the *manner, conditions, and scope of the examination*.") (emphasis added). ODRC's only support for their position—*Anderson v. Sposato*, 2013 U.S. Dist. LEXIS 21214 (E.D.N.Y. Feb. 11, 2013)—is not a judicial opinion resolving a controversy over Rule 35; it is a consolidation order with standardized discovery terms mentioning that examinations can be conducted by agreement of the parties. ODRC Br. at 10. The case is not authority for ODRC's position that a line in an affidavit gave them blanket authority to search him without contacting his counsel or the Court, and does not relieve ODRC of the requirements of the Civil Rules.

## IV. Defendants are not entitled to qualified immunity.

The district court did not address the applicability of the qualified immunity doctrine, and this court typically will not resolve that issue in the first instance before a district court has had an opportunity to do so in sufficient detail. *Stoudemire v. Mich. Dep't of Corr.*, 705 F.3d 560, 571 (6th Cir. 2013). Still, ODRC has never set forth a valid penological reason why it

16

would allow Koger to fast as a Muslim, but not as a Rastafarian. Denying an individual a "reasonable opportunity of pursuing his faith comparable to the opportunity afforded fellow prisoners who adhere to conventional religious precepts" amounts to "palpable discrimination" in violation of the First Amendment. *Cruz v. Beto*, 405 U.S. 319, 322, 92 S.Ct. 1079 (1972). And there is well-established Sixth Circuit law that prohibiting religious inmates from observing religious holidays impermissibly infringes on their free exercise of religion. *Whitney v. Brown*, 882 F.2d 1068, 1071 (6th Cir. 1989) (prohibiting Jewish inmates from observing Passover Seders infringes on their First Amendment rights to freely exercise their religion). Given these authorities, ODRC should have known that approving or denying an accommodation request to fast during a holy day based solely upon the religion on the form, violated Koger's free exercise and equal protection rights.

## Conclusion

The ODRC Defendants continue to substantially burden Koger's religious beliefs with no valid penological interest. Several factual issues remain for trial: whether the revised grooming policy is justified as applied to Koger, whether ODRC is permitted to treat Rastafarians differently than

it treats inmates who hold other religious beliefs, and whether less-restrictive alternatives exist to accomplish ODRC's stated purposes.

Koger respectfully requests that this Court reverse the district court's order granting summary judgment to the ODRC Defendants, and remand the case for further proceedings consistent with the authorities cited herein. Koger also requests that this Court reverse the district court's partial denial of Koger's Notice of Objection regarding the improper examination, and issue an order requiring ODRC show cause why sanctions should not issue for their discovery misconduct.

Respectfully Submitted,

*/s/Andrew Geronimo*
Andrew Geronimo
*Counsel for Plaintiff-Appellant Cecil Koger*

**CERTIFICATE OF COMPLIANCE**

I hereby certify that the foregoing brief complies with the type-volume limitation provided in F.R.A.P. 32(a)(7)(B).

The foregoing brief contains a total of 3,698 words of Book Antiqua (proportional) 14-point type. The word processing software used to prepare this brief was Microsoft Office Professional Plus 2016.

*/s/Andrew Geronimo*
Andrew Geronimo
*Counsel for Plaintiff-Appellant Cecil Koger*

**CERTIFICATE OF SERVICE**

I hereby certify that I filed Plaintiff-Appellant Cecil Koger's Reply Brief using the Court's electronic filing system on February 5, 2020. The court's filing system will electronically serve all parties of record.

*/s/Andrew Geronimo*
Andrew Geronimo
*Counsel for Plaintiff-Appellant Cecil Koger*